[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Friends of Hillhouse Avenue (Friends) was established by a group of interested citizens of the New Haven area to enjoin Yale University (Yale), from demolishing the building at 85 Trumbull Street now known as "Maple Cottage" pursuant to the Connecticut Environmental Act ("EPA") Connecticut General Statutes §§ 22a-16 et seq.
Friends claim that the demolition of Maple Cottage would be unreasonable because of the property's association with Alexander Jackson Davis (Davis) and that it was the "girlhood home of Lillie Devereaux Blake" (1883-1913).
Friends allege that Maple Cottage is part of a district known as the Hillhouse Avenue National Register Historic District listed on the National Register of Historic Places (16 U.S.C. § 470a, as amended). The EPA statute is applicable to the unreasonable destruction of historic structures and landmarks of the state. Under Conn. Gen. Stat. § 22a-19a historic structures are "those properties . . . which are part of a district listed on the National Register and which have been determined by the StateHistoric Preservation Board to contribute to the historic CT Page 4167 significance of such district" (emphasis added).
Alexander Jackson Davis was a founder of the American Architectural profession. A member of Friends, Antress Farwell, gave the background of Davis. She testified that Maple Cottage is important to the Hillhouse District because it is an integral part of Davis' design for the 19th Century planned community. Ms. Farwell also testified that Maple Cottage was important because of its social history, in that Lillie Devereaux Blake, a prominent writer, women's rights activist and civil war correspondent lived there in her younger days. Cohn Ingersoll (Ingersoll) also lived there around 1870. Ingersoll was an attorney and noted Connecticut Statesman. No evidence was provided as to Ingersoll's contributions to history.
Yale does not dispute that 85 Trumbull is an "historic structure" under section 22a-19a. However, properties are deemed to be "contributing" structure for a particular reason and the particular reason is its association with Davis not Lillie Devereaux Blake. The court agrees with Yale's analysis set forth in its Post Trial Brief (pp 15-16) that under 22a-19 "Friends only has standing to oppose demolition of a `historic structure or landmark' based upon the specific reason that led to the listing on the National Register. . . . Ms. Blake's association with 85 Trumbull was not the basis for designating the property a contributing structure. Evidence of her association is legally irrelevant in determining whether the property is historically significant, and thus, is irrelevant to the question whether demolition of 85 Trumbull would constitute the unreasonable destruction of an historic structure. . . ." Under federal regulations to evaluating properties for the National Register, a property is not eligible for listing unless the person associated with the property did the things for which she is notable while she was living in the property. Sec. 36 C.F.K. § 60.4. The testimony established, however, that Ms. Blake had ceased to live at 85 Trumbull well before the activities for which she became known."
Friends argue that in order to establish its prima facie case under EPA they need only to (a) establish that Maple Cottage contributes to a National Register District; (b) Yale is reasonably likely to destroy it and (c) the suit is not solely motivated by harassment purposes. The plaintiffs argue they have established each of these elements. CT Page 4168
Yale argues that Friends instituted this lawsuit to harass Yale, not because of a good faith belief that 85 Trumbull deserved protection as an historic structure. Yale refers to Defendant's Exhibit F, the agreement wherein Yale agreed with the New Haven Preservation Trust to full exterior restoration, and an interior restoration of four properties.[1] Yale also agreed to market a fifth building nationally for a period of one year for removal to another site. New Haven Trust and Yale had however agreed, under paragraph 5 of said agreement as follows:
 "Maple Cottage, 85 Trumbull Street 1836, Alexander J. Davis Contributing Structure — Hillhouse Avenue Historic District, National Register of Historic Places.
 This structure, while a Contributing Structure and the work of a noted architect, has lost virtually all of its exterior materials and all of its interior details. Sections of the building are severely structurally deficient as are all mechanical systems.
 The primary remaining historical or architectural value of this building is the contribution of its massing and siting to the street scape of Trumbull Street.
 This property will be demolished to clear a future development site. The building to occupy this site will help mark Trumbull Street as a major entry to the University's Campus. When designed, this building will respect the height, setbacks and massing rhythm currently existing on Trumbull Street.
Interim use for the site will be as a landscaped parking lot.
Demolition will take place in 1998."
Friends was then organized with a group of individuals for the purpose of preventing the destruction of Maple Cottage. Friends requested and Yale agreed to allow Connecticut Historical Commission ("CHC") determine whether under its authority to oppose the destruction and also to ask the Attorney General to intervene to stop the proposed demolition.
Maximilian L. Ferro (Ferro) an architectural and preservation historian was selected by CHC to do a study of the condition of the building. Jack Gold (Gold), a member of Friends recognized CT Page 4169 Ferro's qualifications as outstanding. Notwithstanding Ferro's qualification, Gold and another spokesperson for Friends stated they never intended to have Ferro's findings to be final. Ferro was retained by Yale and on November 4, 1998 after hearing the report and conclusions of Ferro, CHC voted not to ask the Attorney General to intervene to stop the demolition. (Exhibit L).
Ferro gave documentary and physical evidence at trial that there was nothing left of the original design except a seven foot board in the wrong place. Ferro further testified the House known as Maple Cottage was never built to reflect Davis's design in the first place. He testified as a historian all that Ms. Blake did at Maple Cottage was to live there as a child and all her credits and recognition of her came after she left New Haven. Ferro testified that of the present condition nothing is left of what James Hillhouse built. Ferro concluded and this court finds from all the documentary and physical evidence that nothing remains except what Ferro stated as the seven foot board. Ferro even went on to conclude that the building was unrestorable to an authentic early nineteenth century house and probably ineligible to be continued listed on the National Register of Historic places. Ferro opinionated that Maple Cottage cannot be restored to the House of 1837 because nobody knows what Davis wanted. Ferro stated we know what James Hillhouse wanted to do but not what Davis wanted. The 1870 design of Maple Cottage by Attorney Ingersoll would not make it eligible for National Register status.
This court, from all the evidence presented, cannot conclude that the demolition of 85 Trumbull Street would be unreasonable.
In Manchester Environmental Coalition v. Stockton,184 Conn. 51 at page 60 the court held:
"Once a prima facie case is shown, the burden of production shifts to the defendant. Under § 22a-17, "the defendant may rebut the prima facie showing by the submission of evidence to the contrary." As stated in Ray v. Mason County Drain Commissioner, supra, 311-12, "[t]he nature of the evidence necessary to rebut plaintiff's showing will vary with the type of environmental pollution, impairment or destruction alleged and with the nature and amount of the evidence proffered by the plaintiff. In some case, no doubt, testimony by expert witnesses may be sufficient to rebut plaintiff's CT Page 4170 prima facie showing. While in other actions the defendant may find it necessary to bring forward filed studies, actual test, and analysis which support his contention that the environment has not or will not be polluted, impaired or destroyed by his conduct. Such proofs become necessary when the impact upon the environment resulting from the defendants' conduct cannot be ascertained with any degree of reasonable certainty absent empirical studies or tests." Because the trial court did not apply the statutory burden-shifting test, it did not decide whether the defendants sufficiently rebutted the plaintiff's prima facie case. This issue must be determined on remand."
 "In addition to rebutting the plaintiffs' prima facie case, the defendants may also prove, "by way of an affirmative defense, that, considering all relevant surrounding circumstances and factors, there is no feasible and prudent alternative to the defendant's conduct and that such conduct is consistent with the reasonable requirements of the public health, safety and welfare." General Statutes § 22a-17. Id., p. 61
Yale, by way of special defense, alleged considering all relevant surrounding circumstances and factors there is no feasible and prudent alternative to the demolition of the structure and the demolition is consistent with reasonable requirements of public health, safety and welfare.
Any effort to restore 85 Trumbull would be a replica not a restoration of the alleged actual design of the famous architect Alexander Jackson Davis.
This court finds that the defendant Yale has not only rebutted the prima facie case claimed by Friends but has proven that renovation is not a prudent alternative to demolition.
The court viewed the premises which has had a history of commercial owners and tenants. At one time it was used as doctors offices. The original design has had fire escapes added as well as other substantial physical additions by Ingersoll and subsequent occupants and owners.
Yale argues, not only has it satisfied its burden of proof under its special defense, but to place upon Yale the obligation to expend large sums of money not for its benefit but the benefit of the public would constitute an unconstitutional taking of CT Page 4171 property. For this authority Yale cites Lafayette Park BaptistChurch 553 S.W.2d. At 864.
The court heard testimony as to the costs to renovate and or restore the building to its original form. The evidence presented by Yale as to the costs for repairs and restoration was more credible and reasonable then that offered by Friends witnesses. In order to decide whether renovation is a prudent alternative to demolition it is necessary to compare estimated costs of renovation to the fair market value of the property. The court concludes that to restore Maple Cottage it would cost approximately between $1.8 million dollars and 2.5 Million Dollars. Yale gave expert testimony that the fair market value of the property after renovation would be $435,000.00. The experts offered by Friends as to the value of the property after renovation would not restore the original fabric of Maple Cottage. Yale's estimates of costs and values are more reasonable and reliable than those testified to by Friend's experts. No prudent investor would undertake the costs of renovation proposed by Friends for the returns it would reasonably realize.
The evidence provided by Friends confirms that renovation is not a prudent alternative to demolition.
Yale argues that a court ordered renovation under the circumstances would amount to an unconstitutional taking of property without compensation.
In conclusion the court finds that Friends has not met its burden of proof that demolition of Maple Cottage, 85 Trumbull, would constitute an unreasonable destruction of an historic landmark and Yale has proven that there is no feasible and prudent alternative to demolition. Such conduct by Yale of proposed demolition is consistent with reasonable requirements of the public health, safety and welfare.
Petition for Permanent Injunctive Relief is denied. Judgment may enter in favor of defendant.
Frank S. Meadow Judge Trial Referee